UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALLYSON ANDREWS,

    Plaintiff,

v.

                                   CASE NO.:

WESTLAKE SERVICES, LLC D.B.A.
WESTLAKE FINANCIAL SERVICES,

    Defendant.
_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2014, 1,949,603 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2015 this number was 2,636,477 and in 2016 it was 3,857,627.  In 2017, between January and August alone the FTC received more than 3,500,000 robocall complaints.[1]

3. Defendant, Westlake Services, LLC D.B.A. Westlake Financial Services (hereinafter "Westlake" and/or simply "Defendant"), robocalled the Plaintiff at least 452 times.

4. Westlake has a corporate policy to robocall people thousands of times.

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years.

*Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. Plaintiff, Allyson Andrews, alleges Defendant, Westlake, robocalled her more than 452 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

7. Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp., 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8. Congress enacted the TCPA to prevent companies like Westlake from invading American citizens' privacy and prevent illegal robocalls.

9. Congress also enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations alleged in the Complaint occurred in Farmington Hills, Michigan, and in Florida.

## FACTUAL ALLEGATIONS

13. At all times material hereto the Plaintiff has resided in Farmington Hills, Michigan.

14. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § and 1692(a)(3).

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7).

18. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

19. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (352) 272-5874.

20. Plaintiff was the "called party" during each phone call subject to this lawsuit.

21. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

3

22. Defendant did not have Plaintiff's "express consent" to call her cell phone.

23. "Express consent" is narrowly construed by the courts.

24. It is Defendant's burden to prove it had "express consent" per the TCPA to call Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

25. It is Defendant's burden to prove it had "express consent" per the TCPA to call Plaintiff on her cell phone using an ATDS for each account they were calling on.

26. Plaintiff put Defendant on notice she did not want the Defendant contacting her further.

27. Plaintiff repeatedly told Defendant to stop calling.[2]

28. Defendant did not have Plaintiff's express consent to call her on the account(s) it called her on.

29. Plaintiff unequivically revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

30. Defendant attempted to collect a debt from Plaintiff by this campaign of telephone calls.

31. Defendant made at least one call to (313) 888-1444.

32. Defendant made at least one call to (313) 888-1444 using an ATDS.

33. Defendant made at least ten (10) calls to (313) 888-1444.

34. Defendant made at least ten (10) calls to (313) 888-1444 using an ATDS.

35. Defendant made at least one hundred (100) calls to (313) 888-1444.

36. Defendant made at least one hundred (100) calls to (313) 888-1444 using an ATDS.

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what the Plaintiff said to it.

37. Each call the Defendant made to Plaintiff's cell phone was done so without Plaintifff's "express permission".

38. Defendant has called other people's cell phones without their express consent.

39. Each call the Defendant made to Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

40. The calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

41. Plaintiff repeatedly requested Defendant to stop calling her cell phone, however, Defendant continued to make calls.

42. Defendant has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

43. Defendant ignored Plaintiff's conversations with it putting it on notice that she did not want any more phone calls.

44. Defendant has recorded at least one conversation with Plaintiff.

45. Defendant has recorded numerous conversations with Plaintiff.

46. Defendant has made approximately four hundred fifty-two (452) calls to Plaintiff's aforementioned cellular telephone number since in or about January of 2018, which will be established exactly once Defendant turns over its dialer records.

47. Despite actual knowledge of its wrongdoing Defendant continued its campaign of abusive robocalls.

48. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

49.     By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

50.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

51.     Defendant's phone calls harmed Plaintiff by wasting her time.

52.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

53.     Defendant's corporate policies and procedures are structured as to continue to call individuals like Plaintiff, despite these individuals revoking any consent Defendant may have mistakenly believed it had.

54.     Defendant's corporate policies and procedures provided no means for Plaintiff to have her aforementioned cellular number removed from the call list.

55.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

56.     Plaintiff unequivically revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

57. Defendant never had Plaintiff's express consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

58. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

59. Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

60. Defendant willfully or knowingly violated the TCPA with respect to Plaintiff.

## COUNT I
### (Violation of the TCPA)

61. Plaintiff incorporates Paragraphs one (1) through sixty (60).

62. Defendant willfully violated the TCPA with respect to Plaintiff each time it called Plaintiff after she revoked her consent to be called by it using an ATDS or pre-recorded voice.

63. Defendant knowingly violated the TCPA with respect to Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called by it using an ATDS or pre-recorded voice.

64. Defendant, Westlake, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

65. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

66. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Westlake, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Westlake, for statutory damages, punitive damages, actual damages and any other such relief the Court deems just and proper.

## COUNT II
### (Violation of the FCCPA)

67. Plaintiff incorporates incorporates Paragraphs one (1) through sixty-six (66).

68. At all times relevant to this action Defendant is subject to and must abide by the laws of Florida, including Florida Statute § 559.72.

69. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass her or her family.

70. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency even after Plaintiff told Defendant to stop calling. This frequency can reasonably be expected to harass the debtor or her family.

71. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

72. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Westlake Services, LLC D.B.A. Westlake Financial Services, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the Court deems just and proper.

Respectfully submitted,


/s/ Geoffrey Parmer, Esq.
Geoffrey E. Parmer, Esquire
Florida Bar No. 989258
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500 x206
Facsimile: (813) 435-2369
Geoff@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*